IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-00587-BNB-KMT

GALENA STREET FUND, L.P.,

Plaintiff,

v.

WELLS FARGO BANK, N.A.,

Defendant.

_____

**ORDER**
_____

This matter arises on **Plaintiff Galena's Motion to Compel and Request for Ruling Pursuant to Fed. R. Civ. P. 25(b)(5)(B)** [Doc. # 73, filed 6/24/2013] (the "Motion to Compel"), which is GRANTED with respect to Exhibits B25 and B35 and DENIED in all other respects.

Galena seeks an order that the defendant, Wells Fargo Bank ("Wells Fargo"), waived the attorney-client privilege with respect to 1,712 documents claimed to be privileged in their entirety and 6,615 documents subject to redactions. Galena generally does not contest that the documents are privileged,[1] but urges four grounds upon which the privilege has been waived:

(1) The fiduciary exception to the attorney-client privilege, arguing that Wells Fargo sought legal advice for the benefit of the Trusts and that those communications cannot be

---

[1]At Parts I.A. (Fiduciary Exception), I.B. (At-Issue Waiver), and II. (Waiver By Production) of its Motion to Compel, Galena does not dispute that the documents are privileged, but it claims a waiver. At Part I.C. (Improper Assertion), however, Galena does argue that Wells Fargo has claimed the attorney-client privilege with respect to "numerous communications that are facially not privileged."

withheld from trust beneficiaries;

   (2) At-issue waiver, arguing that Wells Fargo waived the privilege when it designated WaMu as a non-party at fault;

   (3) Waiver by failing properly to assert the privilege, failing to demonstrate sufficient grounds for the privilege, and based on Wells Fargo's overreaching and repeated improper assertion of the privilege; and

   (4) Waiver by producing privileged documents in discovery.

   Jurisdiction is premised on both a federal question and diversity. Scheduling Order [Doc. # 27] at Part 2. "In a civil action based upon a state cause of action, state law controls the determination of privileges." White v. American Airlines, Inc., 915 F.2d 1414, 1424 (10th Cir. 1990). Consequently, I look to Colorado state law in resolving the privilege issues raised in the Motion to Compel. In particular, under Colorado law, the burden of establishing a waiver of the attorney-client privilege "rests with the party seeking to overcome the privilege." People v. Madera, 112 P.3d 688, 690 (Colo. 2005).

   Galena is an investor in securitized trusts holding mortgage loans known as residential mortgage-backed securities. This action concerns two such securities--Reperforming Loan REMIC Trust Certificates Series 2002-2, and Reperforming Loan REMIC Trust Certificates Series 2003-R1 (the "Trusts"). Galena alleges that Wells Fargo, as Trustee of the Trusts, owes it fiduciary duties (1) of loyalty, (2) to avoid conflicts of interest, (3) of impartiality among trust beneficiaries, (4) of care, (5) to prevent loss of trust assets, and (6) of full disclosure. Complaint [Doc. # 1] at ¶96. In denying Wells Fargo's Motion to Dismiss on the claim for breach of fiduciary duty, I found that "Galena has sufficiently alleged that Wells Fargo labored under a

conflict of interest when it purchased WaMu's servicing portfolio and then functioned as both trustee for the trusts and as servicer for many of the loans in the trusts." Order [Doc. # 64] at p. 25.

## I. Fiduciary Exception to the Attorney-Client Privilege

Under federal law, courts have recognized a "fiduciary exception" to the attorney-client privilege. "Under that exception, which courts have applied in the context of common-law trusts, a trustee who obtains legal advice related to the execution of fiduciary obligations is precluded from asserting the attorney-client privilege against beneficiaries of the trust." United States v. Jicarilla Apache Nation, 131 S. Ct. 2313, 2319 (2011).

Galena begins by arguing that "Colorado recognizes the existence of a fiduciary exception to attorney-client privilege," citing Neusteter v. District Court, 675 P.2d 1 (Colo. 1984). Contrary to Galena's assertion, however, the Colorado Supreme Court held in Neusteter that the Colorado statutory accountant-client privilege,[2] not the attorney-client privilege, cannot be invoked to protect from disclosure communications between a corporation and its accountants in an action by shareholders against the corporation. The Colorado high court stated:

> [W]here the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

---

[2]The Colorado court did analogize the attorney-client and accountant-client privileges, stating that "[t]he statutory accountant-client privilege is analogous to the attorney-client privilege, long established at common law and not codified. . . ." Neusteter, 675 P.2d at 5.

3

Id. at 5 (quoting Garner v. Wolfinbarger, 430 F.2d 1093, 1103-04 (5th Cir. 1970)).[3]

Subsequently, in Ryskamp v. Looney, 2011 WL 3861437 *11 (D. Colo. Sept. 1, 2011), this court applied Colorado law and extended Neusteter to a dispute concerning whether the fiduciary exception applied to the attorney-client privilege. The court recognized the exception, but found that the plaintiff had failed to establish good cause to overcome the privilege.

I agree with the court in Ryskamp that the Colorado Supreme Court would extend the fiduciary exception to the attorney-client privilege. In addition, I anticipate that the Colorado Supreme Court would not limit the fiduciary exception to the corporation/shareholder context but, instead, would apply it to an action involving a dispute between a trustee and trust beneficiaries. However, in order for the fiduciary exception to the attorney-client privilege to apply, the communication must concern legal advice related to the execution of fiduciary obligations and there must be good cause justifying a finding that the privilege was waived.

Galena argues that Wells Fargo has invoked the attorney-client privilege to its communications with ten law firms either to withhold documents altogether or to redact some of the contents of documents. Motion to Compel [Doc. # 73] at p. 8 and n.3. Galena focuses on only three of the law firms, however: Seward & Kissel; Jones, Bell, Abbott, Fleming & Fitzgerald; and Hunton & Williams. The argument with respect to the remaining seven firms is inadequately developed, requiring that I deny the Motion to Compel with respect to them.

Although Galena has attached more than 1,000 pages of exhibits to the Motion to Compel [Doc. ## 71-1 through 71-21], it directs me to only two exhibits--Ex. E4 and Ex. E5--in support of its argument that the withheld and redacted documents involve communications

---

[3] Wolfinberger recognized the fiduciary exception to the attorney-client privilege.

concerning legal advice related to the execution of Wells Fargo's fiduciary obligations to the Trusts or their beneficiaries.

It is difficult to know the purpose of Ex. E5, and Galena provides no guidance in its briefing.  In addition, Ex. E5 contains 53 pages, and Galena failed to direct me with any particularity to the portion of the exhibit upon which it relies.

Exhibit E4 is a Noteholder Consent Form which states that Wells Fargo has retained Seward & Kissel and Jones Bell and that "the services rendered by said firms will be of benefit to the Trustee, the Certificateholders and the Trust."  Ex. E4 [Doc. # 71-17] at p. 7, ¶5. The Noteholder Consent Form is dated September 9, 2010.

The evidence establishes that Wells Fargo retained the law firm of Hunton & Williams "to assist Wells Fargo in investigating Galena's claims of improper servicing by Washington Mutual" and that "Hunton & Williams was retained under possible threat of litigation from . . . Galena. . . ."  Declaration of William Fay [Doc. # 87-10] (the "Fay Decl.") at ¶5.  In addition, Wells Fargo retained Seward & Kissel and Jones Bell in or after June 2009, id. at ¶¶6-7, after it had entered into a Tolling Agreement [Doc. # 87-1] by which Galena indicated its belief that "it has claims against the Trustee arising from, related to, or connected to the [Trusts]. . . ."  Tolling Agreement [Doc. # 87-1] at p. 2.

Colorado appellate courts have not addressed the fiduciary exception under facts similar to those presented here.  In the absence of guiding authority, I am persuaded by the reasoning of the court in Herrmann v. Rain Link, Inc., 2012 WL 1207232 **6-7 (D. Kan. April 11, 2012), that the fiduciary exception to the attorney-client privilege has no application where, as here, there is no mutuality of interest between the fiduciary and the beneficiary and where the fiduciary seeks

legal advice for its own protection against claims by the beneficiary.

In Herrmann the court noted that the fiduciary exception to the attorney-client privilege has two bases. First, a fiduciary seeking legal advice concerning matters related to the execution of fiduciary obligations "is not the sole client of the attorney but is merely a proxy for the beneficiary" and, second, "a fiduciary has a duty to keep a beneficiary informed of certain matters." Id. at *7. The court continued:

> [W]hen there is no mutuality of interest between the fiduciary and beneficiary, the reasons for applying the fiduciary exception fade. For example a number of courts have noted the fiduciary exception does not apply when fiduciaries seek legal advice for their own protection against beneficiaries or when fiduciaries seek advice about non-fiduciary matters. When fiduciaries seek legal advice in this capacity, their interests are not aligned with the beneficiaries' interests; so, it would make little sense to consider the beneficiaries the true clients of the attorney and therefore entitled to disclosure. Likewise, fiduciaries do not have a duty to keep beneficiaries informed of *all* matters. It naturally follows that the fiduciary exception applies only to communications involving fiduciary matters.

Id.

Perhaps because of the scope of the waiver it urges, Galena paints with an extremely broad brush when it argues that the fiduciary exception applies to prevent Wells Fargo from invoking the attorney-client privilege with respect to the 8,327 disputed documents. Here, as in Herrmann, Galena has failed to show that the documents at issue involve communications about "fiduciary matters" that Wells Fargo was obligated to disclose to Galena. Herrmann, 2012 WL 1207232 at *7.

Galena also argues that Wells Fargo "used Trust assets to compensate the law firms" and that "[w]hen counsel is compensated from trust assets, the presumption is that the 'real client' is

the trust itself, thus the fiduciary exception applies," relying on United States v. Jicarilla Apache Nation, 131 S. Ct. 2313, 2322 (2011). Motion to Compel [Doc. # 73] at p. 8.[4] The Supreme Court recognized payment as one of three factors to be considered in determining the "real client" issue:

> In cases applying the fiduciary exception, courts identify the "real client" based on whether the advice was bought by the trust corpus, whether the trustee had reason to seek advice in a personal rather than a fiduciary capacity, and whether the advice could have been intended for any purpose other than to benefit the trust.

Id. at 2326.

Here, only one of the three factors--that trust funds were used to pay the attorneys--supports a finding that the Trusts were the real clients. The other two factors indicate that the advice was not for the benefit of the Trusts or their beneficiaries. In particular, and as noted above, the evidence establishes that Wells Fargo retained the law firm of Hunton & Williams "to assist Wells Fargo in investigating Galena's claims of improper servicing by Washington Mutual" and that "Hunton & Williams was retained under possible threat of litigation from . . . Galena," Fay Decl. [Doc. # 87-10] at ¶5, and that Wells Fargo retained Seward & Kissel and Jones Bell in or after June 2009, id. at ¶¶6-7, after it had entered into a Tolling Agreement [Doc. # 87-1] by which Galena indicated its belief that "it has claims against the Trustee [Wells Fargo] arising from, related to, or connected to the [Trusts]. . . ." Tolling Agreement [Doc. # 87-1] at p. 2. Consequently, Wells Fargo had reasons to seek advice for its own protection against the Trusts and their beneficiaries, and the advice was intended for purposes other than to benefit the

---

[4]Wells Fargo does not dispute that trust funds were used to pay at least some of the attorneys fees, but argues that it was entitled to do so under its "broad indemnification rights as trustee." Response [Doc. # 87] at p. 11.

Trust. On balance, the factors indicate that Wells Fargo, and not the Trusts or their beneficiaries, was the real client.

## II. At-Issue Waiver of the Attorney Client Privilege

Galena next argues that Wells Fargo waived the attorney-client privilege by designating WaMu as a non-party at fault, thus putting at-issue Wells Fargo's attorney-client communications relating to its liability for WaMu's servicing errors. Wells Fargo's non-party at fault designation states in relevant part:

> Throughout the course of its Complaint, . . . Galena alleges more specifically that WaMu failed to service the loans in the trust in a manner consistent with the Servicing Agreement and applicable industry standards, failed to properly make insurance claims to the Federal Housing Administration and U.S. Department of Veteran Affairs, made improper advances to the trust, and wrongfully wrote down the principal balance of the loans in the trusts.
> \* \* \*
> Wells Fargo has moved to dismiss Galena's Complaint in this action, contending, among other things, that Wells Fargo is not liable under any of Galena's various legal theories related to servicing losses that occurred while WaMu was servicing the loans in trust. If Galena is permitted to proceed on its negligence claim, however, WaMu is liable for any and all losses alleged by Galena arising from that claim.
> \* \* \*
> . . . Galena itself has pled the elements of a negligence claim against WaMu. In this context, where Galena nevertheless has sued only Wells Fargo as a defendant, it is appropriate for Wells Fargo to name WaMu as a potentially liable nonparty. To the extent Galena is permitted by this Court to proceed with a negligence claim, WaMu is wholly or partially at fault for any and all damages, injuries, or losses that can be proved by Galena.

Defendant's Amended Designation of Nonparty at Fault [Doc. # 48] (the "Non-Party Designation") at pp. 2-3.

I previously dismissed Galena's negligence claim insofar as it was brought against Wells

Fargo in its capacity as trustee. I allowed the claim to proceed, however, insofar as it is brought against Wells Fargo as servicer. Order [Doc. # 64] at pp. 28-29.

The Complaint alleges that Wells Fargo bought and was assigned WaMu's servicing rights for the Trusts as of July 17, 2006. Complaint [Doc. # 1] at ¶60. The Servicing Rights Purchase Agreement included an Interim Servicing Agreement [Doc. # 17-6 at p. 100] by which Wells Fargo appointed WaMu to act as Interim Servicer between the Sale Date (defined as July 31, 2006), and the Transfer Date (defined as December 1, 2006, "unless otherwise mutually agreed in writing by the Parties"). I understand the Non-Party Designation merely to assert Wells Fargo's contention that WaMu is wholly or partially responsible for its own negligence as servicer, including any negligence while it served as Interim Servicer.

Colorado courts have recognized that the attorney-client privilege is not absolute and may be waived:

> [T]he attorney-client privilege is not an absolute privilege and may be waived by the client. Any waiver must be demonstrated by evidence that the client, by words or conduct, has expressly or impliedly forsaken his or her claim of confidentiality with respect to the information in question and, thus, has consented to its disclosure.

People v. Sickich, 935 P.2d 70, 73 (Colo. App. 1996).

The Colorado Supreme Court expressly recognized the at-issue exception to the attorney-client privilege in Mountain States Telephone and Telegraph Co. v. DiFede, 780 P.2d 533, 543 (Colo. 1989):

> Although we have not directly addressed this issue before, it is clear from our review of cases from other states that by placing in issue a confidential communication going directly to the claim or defense, a party impliedly waives the attorney-client privilege with respect to that communication.

9

More recently, in People v. Madera, 112 P.3d 688, 691-92 (Colo. 2005), the Colorado court explained:

> Courts have found implied waiver of the attorney-client privilege when a defendant places the allegedly privileged communication at issue in the litigation, because any other rule would enable the client to use as a sword the protection which is awarded him as a shield.
>
> \* \* \*
>
> [W]e have adopted the following three-prong test for implied [at-issue] waiver of the attorney-client privilege which asks whether: (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

(Internal quotation and citation omitted.)  Madera involved a criminal defendant who sought to withdraw his guilty plea based on a claim of ineffective assistance of counsel.  In particular, the defendant claimed that his counsel failed to explain the impact of the proposed plea on the defendant's sentence.  Id. at 692.  The prosecution resisted withdrawal of the plea and argued that the defendant waived any privilege between himself and his defense counsel by putting at issue the adequacy of that representation.  Even under these facts, the Colorado court refused to find a blanket waiver of the attorney-client privilege and ruled instead that the privilege was waived only "with respect to communications [the defendant] had with [defense counsel] about the sentence he faced by pleading guilty."  Id.  The court further cautioned against the excessive application of the at-issue waiver and ruled that a party asserting waiver must "show that the privilege exception applies to each document it [seeks] in discovery."  Id. at 690.

And in People v. Trujillo, 144 P.3d 539, 543 (Colo. 2006), the Colorado Supreme Court explained that the at-issue waiver applies "if a client asserts a claim or defense that depends upon

privileged information. . . ." At-issue waiver does not occur merely because a client has received legal advice about a matter. Such a rule would swallow the attorney-client privilege. Instead, at-issue waiver applies only where the claim or defense "depends"on the privileged information. In other words, a party cannot assert a defense that depends on privileged information and simultaneously use the privilege to keep that information from the opposing party. Id.

Galena again paints with a broad brush in connection with the documents it claims are subject to Wells Fargo's alleged at-issue waiver. At times it appears to argue that the waiver applies to all of the documents "Wells Fargo is attempting to claw-back."[5] Motion to Compel [Doc. # 73] at p. 13. Elsewhere, it appears that Galena asserts at-issue waiver only as to Exhibits B2, B25, B35, and B85. Id. at p. 14 n.6.

Except as to B2, B25, B35, and B85, Galena provides no meaningful explanation as to how any of the disputed documents have been put at-issue by Wells Fargo's Non-Party Designation or how application of the attorney-client privilege to those documents will deny Galena access to information vital to its defense, and I decline to make the arguments for it.

Exhibit B2 [Doc. # 71 at pp.10-11] is a two page "Issues Memo" apparently prepared by Wells Fargo and which Wells Fargo attempts to claw back. It contains a discussion of "Wells Fargo's Position" with respect to servicing errors committed by WaMu both prior to and after the Servicing Rights Purchase Agreement between Wells Fargo. Significantly, the memo contains a section captioned "Remedy" in which Wells Fargo discusses its remedy against

---

[5]Galena says that "Exhibit B [to the Motion to Compel] contains the documents Wells Fargo has clawed back in their entirety. Exhibit C contains documents Wells Fargo claims required additional redaction. . . ." Motion to Compel [Doc. # 73] at p. 4 n.2. Exhibit B appears to contain 118 documents comprising 789 pages, and Exhibit C appears to contain 32 documents comprising 159 pages.

11

WaMu for the alleged servicing errors. Although information concerning the remedy appears to be relevant to Wells Fargo's theory of WaMu's non-party liability, Wells Fargo's non-party claim does not depend on that privileged information.

Exhibit B85 is 12 pages and includes (1) a document captioned "WaMu Denial Detail"; (2) handwritten notes; (3) a chart captioned "WaMu Indemnification Tracking"; and (4) various emails. The "WaMu Denial Detail" includes a section captioned "Claim is Denied-Per our legal department" which demonstrates that Wells Fargo received legal advice about its rights with respect to servicing errors, Ex. B85 [Doc. # 71-6] at p. 79, but Wells Fargo's non-party claim does not depend on that advice. In addition, portions of the handwritten notes concern how WaMu processed "HUD receipts," but Wells Fargo's non-party claim does not depend on that information, either. Id. at p. 89.

Exhibit B35 is an email chain containing communications between May 19, 2006, and October 17, 2006. In the initial email, the author states:

> In December 2004 . . . Washington Mutual sought guidance from Wells Fargo to confirm the appropriate method of remitting liquidation proceeds from the federally insured loans. . . . Washington Mutual was directed by Wells Fargo to remit liquidation proceeds only after both Part A and Part B proceeds had been collected (as opposed to remitting Part A proceeds and Part B proceeds separately following receipt). Washington Mutual relied upon and followed Wells Fargo's directions until approximately January 2005, when it revised its remittance procedures.

Ex. B35 [Doc. # 71-2] at p. 49. Wells Fargo's non-party claim that WaMu is responsible for its own negligence in servicing the loans depends on the underlying premise that WaMu independently decided how to remit liquidation proceeds from the federally insured loans. Having asserted WaMu's conduct as the loan servicer as a sword by means of the Non-Party

Designation, Wells Fargo cannot use the attorney-client privilege as a shield to hide communications that indicate that Wells Fargo directed WaMu on how to remit those proceeds. I find that any attorney-client privilege attaching to Exhibit B35 has been put at-issue by the Non-Party Designation and is waived.

Finally, Exhibit B25 is an email chain containing communications concerning scheduling a telephone call. No legal advice is sought or given and the email contains no confidential information. The communications contained in Exhibit B25 are not privileged.

### III. Waiver By Improper Assertion of the Attorney-Client Privilege

Galena seeks an order finding that Wells Fargo has waived the attorney client privilege based on the following:

(1) "Galena's analysis of the documents Wells Fargo has produced, and of those it seeks to claw back, reveal[] numerous communications that are facially not privileged," including for example: (a) "redacted emails that were sent to Dan Reilly, an attorney for Galena"; (b) emails to Galena's in-house counsel; (c) emails with counsel representing Chase and WaMu; and (d) communications with WaMu, Countrywide, Freddie Mac, Babson Capital, and others. Motion to Compel [Doc. # 73] at p. 17;

(2) Many instances where communications are redacted in one copy but not in others, including instances where the redacted material is not privileged, id. at p.18; and

(3) Numerous errors on the privilege and redaction logs. Id. at pp. 19-20.

I am not aware of a Colorado appellate decision holding that the improper assertion of the attorney-client privilege is grounds for imposing the wholesale waiver of the privilege, and the parties have not directed me to any. To the contrary, the Colorado Supreme Court in Trujillo

stated that implied waiver had been found under only two circumstances: at-issue waiver, and "when a client discloses privileged communications to a third party." 144 P.3d at 543.

Wells Fargo concedes that it has withheld or redacted documents to which no privilege applies, but it argues that the errors were "unintentional," "inadvertent," and the "result of overcautious review." Response [Doc. # 87] at pp.19-21.

The cases relied on by Galena as supporting the blanket waiver by improper assertion of the privilege involve facts far more egregious than those presented here. For example, in Amway Corp. v. Procter & Gamble Co., 2001 WL 1818698 (W.D. Mich. April 3, 2001), the court found:

> Procter & Gamble's assertion of the attorney-client privilege and work-product immunity for the withheld documents was not substantially justified. This finding is made inevitable by the history of Procter & Gamble's treatment of these documents. Over two years ago, Magistrate Judge Boyce found, after *in camera* inspection, that Procter & Gamble had no basis for the assertion of privilege or immunity. When the issue was raised by Amway in the present litigation, Procter & Gamble insisted upon a *de novo* review of the issue, but presented this court with the same affidavits that Judge Boyce found inadequate in 1998. Even worse, Procter & Gamble ignored this court's order directing it to support its claims with an affidavit for each withheld document and it failed to produce document no 405. In essence, Procter & Gamble was given a second chance to support its claims, but failed to do so. As noted above, the only reasonable inference to be drawn from these facts is that Procter & Gamble knew that its claims were meritless but persisted in pressing them to forestall disclosure of embarrassing and harmful, but not privileged, material.

Id. at *9. In addition, the court noted that "[t]his is not the first time Procter & Gamble has advanced meritless claims of privilege or immunity in this litigation," and itemized five previous instances of improper assertions of privilege which the court characterized, among other things,

as "border[ing] on fantasy." Id.

Similarly, in Pfizer Inc. v. Ranbaxy Laboratories Ltd., 2004 WL 2323135 at **2-3 (D. Del. Oct. 7, 2004), the court found that "Pfizer has improperly used the attorney-client privilege and work product to evade discovery."

I am not persuaded that Wells Fargo's admitted over-designation of material as privileged was an intentional attempt to evade discovery. Although there is evidence that Wells Fargo claimed privilege on documents which clearly are not, Wells Fargo also over-disclosed and now seeks to claw back entirely or make additional redactions to more than 900 pages of its production. See n.5 supra. Moreover, as a result of a remedial review, see Williams' Decl. [Doc. # 87-11] at ¶¶14-15, Wells Fargo produced an additional 1,000 documents previously withheld in error. Reply [Doc. # 90] at pp. 25-26. The conduct alleged here does not warrant the severe sanction of imposing a blanket waiver of the privilege, as Galena urges. See, e.g., High Point SARL v. Spring Nextel Corp., 2012 WL 234024 *4 (D. Kan. Jan. 25, 2012) (finding no evidence of bad faith or ill motive and noting that "waiver of a privilege is a harsh sanction" not appropriate where the errors are "[m]inor procedural violations" and where "good faith attempts at compliance and other such mitigating circumstances bear against finding a waiver").

IV. Waiver By Producing Privileged Documents

Galena served its first set of discovery requests on Wells Fargo on August 1, 2012. In response, Wells Fargo produced a total of 208,000 documents consisting of over 2.2 million pages. Response [Doc. # 87] at p. 32. Specifically, Wells Fargo produced 2 million pages on November 16, 2012, Ex. 5 [Doc. # 87-6]; an additional 107,000 pages on November 27, 2012, Ex. 6 [Doc. # 87-7]; and 206,500 pages on December 13, 2012. Ex. 7 [Doc. # 87-8]. Of the

15

208,000 documents produced, Wells Fargo has attempted to claw back 150 privileged documents as inadvertently produced. See n. 5 supra. Galena resists that attempt, and requests an order finding that Wells Fargo waived the privilege by producing the documents.

The issue of waiver by inadvertent production is governed by Fed. R. Evid. 502. Silverstein v. Federal Bureau of Prisons, 2009 WL 4949959 *9 (D. Colo. Dec. 14, 2009). Rule 502(b) provides:

> **(b) Inadvertent Disclosure.** When made in a federal proceeding . . . the disclosure [of attorney-client privileged communications] does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Rule 26(b)(5)(B), Fed. R. Civ. P., provides:

> **(B)** *Information Produced*. If information produced in discovery is subject to a claim of privilege . . ., the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

However, Rule 502(b) does not remove a party's "responsibility to take reasonable precautions against disclosure of privileged documents and to take reasonable and immediate actions when a disclosure of an otherwise privileged document is discovered." Silverstein, 2009

16

WL 4949959 at *10.  In addition, "[t]he burden of showing that the privilege has not been waived remains with the party claiming the privilege."  Id.

Galena first argues that the production of the 150 disputed documents was not inadvertent because the documents "were reviewed by attorneys and knowingly produced," citing Silverstein, 2009 WL 4949959 at *10.  Motion to Compel [Doc. # 73] at p. 23.

The court in Silverstein held that a document produced under mistaken facts was not inadvertently produced within the meaning of Rule 502(b), reasoning:

> The . . . Document was originally examined by two lawyers representing the BOP, "agency" lawyer Chris Synsvoll and AUSA Marcy Cook.  Both lawyers determined that someone in the office of General Counsel had created the document and presented it to the Director of the BOP and so noted the document as privileged on a log produced to the plaintiff.  Several months later Mr. Synsvoll received inaccurate information about the document causing him to mistakenly identify [it] as the Executive Staff Information Paper, a non-privileged document.  AUSA Cook, proceeding under that mistake, produced the Document to the plaintiff.
>
> This court is not convinced that this type of mistake was Congress' concern when creating Rule 502.  Based on all the commentary, the word "inadvertent" from Rule 502 mandates a remedy for an unintended, rather than a mistaken, disclosure. . . .  This is not a case where the questioned document was part of a larger production which went unnoticed by the producer to the opposition party.

Silverstein, 2009 WL 4949959 at *11.

In this case, by contrast, the evidence indicates that the production of the 150 disputed documents was unintended and that they were "part of a larger production which went unnoticed by the producer. . . ."  Id.  Specifically, counsel for Wells Fargo established an elaborate protocol for the review and production of documents responsive to Galena's requests.  Declaration of

17

Marie E. Williams [Doc. # 87-11] (the "Williams Decl.") at ¶¶4-9.  Despite those efforts, the disputed documents were produced.  According to Wells Fargo's counsel:

> The errors that occurred in identifying, redacting, or withholding potentially privileged communications were inadvertent and not the result of a deliberate attempt to selectively produce documents to gain Wells Fargo an advantage in this litigation.

Id. at ¶17.

In addition, Wells Fargo took reasonable steps to prevent disclosure of privileged documents.  In particular:

> 5.  Due to the large number of documents to be reviewed, Wells Fargo engaged a third party document vendor to perform a privilege and relevance review prior to production.
>
> \* \* \*
>
> 7.  The review was performed by the document review vendor under the supervision of litigation counsel for Wells Fargo.  In an attempt to ensure privileged documents were not produced, litigation counsel for Wells Fargo developed a privilege review protocol.  As part of the protocol, the document reviewers, who are trained to identify privilege issues, were each provided with lists of attorneys' names and firms who represented Wells Fargo during the relevant time period. . . .
>
> 8.  Among other steps taken to locate and withhold privileged materials from production, the document review vendor applied electronic filters to the text of the documents collected. . . . Documents that "hit" on these filters were taken out of the general document population for closer inspection by a group of reviewers at the document review vendor.  All other documents were reviewed by the general document review team for . . . privilege.
>
> 9.  After the initial review was completed, the document review team performed a further "quality control" review, again giving attention to privilege and work-product issues.  After the document review vendor completed its review, litigation counsel for Wells Fargo performed further quality control checks of the documents before producing them to Galena.

Id. at ¶¶5, 7-9.

18

Finally, Wells Fargo took reasonable steps to rectify the error, including notifying Galena pursuant to Fed. R. Civ. P. 26(b)(5)(B) that privileged information had been inadvertently produced. In particular, Wells Fargo became aware of its production of privileged documents in February 2013 and engaged its document review vendor to identify the scope of the problem. Id. at ¶10. On March 25, 2013, Wells Fargo notified Galena and invoked the protections of Rule 26(b)(5)(B). Id. at ¶11. Throughout April and May, the parties became aware of the production of additional privileged documents, and Wells Fargo invoked the protections of Rule 26(b)(5)(B) with respect to the additional documents on June 21, 2013. Motion to Compel [Doc. # 73] at p. 21. Wells Fargo was required to identify the privileged documents that had been produced so that it could provide the necessary notice to Galena. In view of the scope of the production-- 208,000 documents consisting of over 2.2 million pages--Wells Fargo acted with reasonable promptness when invoking Rule 26(b)(5)(B).

I find that Wells Fargo's production of the 150 disputed documents was inadvertent within the meaning of Fed. R. Evid. 502(b) and that there has been no waiver of the attorney-client privilege.

For unexplained reasons, Wells Fargo withdrew its claim of inadvertent production of 24 of the disputed documents. Notice of Withdrawal [Doc. # 119, filed 1/14/2014] at ¶5.[6] Those documents no longer are at issue. See id. at ¶5 (stating that "[b]ecause Wells Fargo is no longer claiming certain documents were inadvertently produced, Galena is withdrawing its request that the Court resolve Wells Fargo's inadvertent production claims" as to those documents). With

---

[6]The documents no longer claimed as privileged are Exs. B12; B15; B18; B23; B25; B30; B42; B43; B44; B46; B47; B48; B52; B53; B71; B73; B80; B81; B82; B90; B92; and B94.

respect to two documents--Exs. B97 and B101--Wells Fargo does not claim that they are privileged in their entirety but only as to portions, and has provided redacted versions of the documents. I have found that the production of Exs. B97 and B101 was inadvertent, and Wells Fargo is entitled to substitute redacted versions to claw back the privileged portions that were inadvertently disclosed.

IT IS ORDERED that the Motion to Compel [Doc. # 73] is GRANTED IN PART and DENIED IN PART as follows:

- GRANTED with respect to Exhibits B25 and B35; and
- DENIED in all other respects.

Dated March 10, 2014.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge